**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

LIBERTY ONE METHANOL, LLC,

Plaintiff(s),

v. CIVIL ACTION NO. 2:26-cv-00165

ALTIVIA SERVICES, LLC, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Liberty One Menthol, LLC's ("Plaintiff") Motion to Remand. (ECF No. 18.) For the reasons discussed herein, the motion is **DENIED**.

***I. BACKGROUND***

This matter arises out of a contract dispute. According to the Complaint, Plaintiff owns and operates a methanol plant in Kanawha County, West Virginia. (ECF No. 29-2 at 6, ¶ 2.) Defendant Altivia Services, LLC ("Altivia") owns the property upon which Plaintiff's plant is located and also provides services to Plaintiff's plant. (*Id.*, ¶¶ 4, 5.)

One of the services Defendant Altivia provides to Plaintiff's plant is the supply of nitrogen. (*Id.* at 8, ¶ 24.) Plaintiff asserts that the plant cannot operate without nitrogen. (*Id.*, ¶¶ 25, 29–30 (explaining that, "[w]ithout nitrogen, the [] plant could experience fires or explosions").) Plaintiff also claims that "[n]o other source of nitrogen is available in an amount that could replace Altivia's supply." (*Id.* at 9, ¶¶ 32–33 (noting that Plaintiff "must source nitrogen from Altivia").)

The terms of service are governed by a Site Services Agreement ("SSA"). (*Id.* at 7–8, ¶¶ 18–20.) Union Carbide Corporation ("UCC") originally owned the property and entered into the SSA with Plaintiff. (*Id.* at 7, ¶¶ 17–18.) As to the nitrogen supply, the SSA allegedly provides that UCC will deliver, and Plaintiff will pay for a "backup supply of the Nitrogen as required by" Plaintiff's plant. (*Id.* at 9, ¶ 36.) Further, "it is anticipated that" Plaintiff's plant "will normally use no more than 5,832 Mscf/year of Nitrogen." (*Id.*, ¶ 37.) To be clear, then, UCC was only supposed to supply the "backup supply," as opposed to the *primary* supply, of nitrogen to Plaintiff's plant. (*See id.*, ¶ 38.)

Based on those terms, Plaintiff and UCC allegedly developed a Contract Quantity and Maximum Quantity. (*Id.* at 10, ¶ 39.) The Contract Quantity, which is the volume of nitrogen reserved by UCC for Plaintiff's plant, was 486 Mscf per month. (*Id.*, ¶¶ 40–42.) The Maximum Quantity, as defined in the SSA, was 729 Mscf per month—which is 1.5 times the monthly Contract Quantity. (*Id.*, ¶¶ 44–47.) If Plaintiff were to exceed those quantities, it would have to seek consent from UCC, which could then impose an "Overage surcharge." (*Id.* at 11–12, ¶¶ 52–59.)

However, due to a later change in the design of the plant, Plaintiff ultimately needed a primary supply of nitrogen from UCC. (*Id.* at 12–13, ¶¶ 60–68.) This need was not accounted for in the SSA. (*Id.* at 13, ¶ 69.) In fact, Plaintiff claims that "[i]t is objectively impossible that a methanol plant of the size and output of [Plaintiff]'s plant would consume no more than 5,832 Mscf per year of a primary supply of nitrogen." (*Id.* at 10, ¶ 49.)

Plaintiff was allegedly negotiating with UCC to correct this mistake in the SSA. (*See id.* at 13, ¶¶ 70–73.) However, UCC then sold the real estate in which Plaintiff's plant was located

and assigned the SSA to Defendant Altivia. (*Id.*, ¶ 74.) Plaintiff claims that Defendant Altivia "did not promptly engage" when Plaintiff requested to continue the negotiations. (*Id.*, ¶ 75.)

Nevertheless, Plaintiff commenced operations. (*Id.*, ¶ 76.) As could be expected, Plaintiff consumed more nitrogen than the Contract Quantity and Maximum Quantity every month and every year. (*Id.* at 14, ¶¶ 77–84.) At first, Defendant Altivia did not charge an overage surcharge and allegedly sent documents stating that overage surcharges would be "waived until [the Contract Quantity was] amended." (*Id.*, ¶¶ 85–87.)

However, after a few years, Defendant Altivia allegedly sent Plaintiff invoices exceeding $1,000,000.00 for retroactive overage surcharges. (*Id.* at 15, ¶ 88.) Plaintiff claims to have refused to pay the overage surcharges and instead requested to meet with Defendant Altivia to discuss the Contract Quantity and Maximum Quantity in the SSA. (*Id.*, ¶¶ 89–90.) At some point, Plaintiff asserts that Defendant Altivia "explicitly promised . . . that Altivia would never shut off supply of nitrogen to [Plaintiff]." (*Id.*, ¶ 91.)

Later on, though, Plaintiff began to suspect that Defendant Altivia was overbilling and, consequently, invoked an audit of Defendant Altivia's billing practices under the SSA. (*Id.*, ¶¶ 93–94.) Defendant Altivia allegedly refused to engage in the audit process unless Plaintiff paid the disputed overage surcharges. (*Id.*, ¶ 95.) After Plaintiff paid the disputed overage surcharges, the audit supposedly revealed that Defendant Altivia had overbilled Plaintiff by nearly $400,000.00 over the course of two years. (*Id.*, ¶¶ 96–97.) Plaintiff claims that Defendant Altivia refused to refund the disputed overage surcharges or credit Plaintiff the $400,000.00 in overbillings. (*Id.* at 16, ¶ 98.)

Plaintiff then invoked the dispute resolution process in the SSA. (*Id.*, ¶¶ 99–104.) However, Plaintiff claims that Defendant Altivia refused to negotiate and, instead, told Plaintiff it was shutting off the nitrogen supply to Plaintiff's plant in 90 days. (*Id.*, ¶¶ 105–106.) Plaintiff asserts that, without Defendant Altivia's nitrogen supply, its plant will close and force the layoff of approximately 50 workers. (*Id.* at 16–17, ¶¶ 107, 110.)

Accordingly, Plaintiff filed suit in the Circuit Court of Kanawha County, West Virginia. (*See generally id.*) The Complaint seeks injunctive relief to prevent Defendant Altivia from shutting off the nitrogen supply while the parties engage in the dispute resolution process. (*See generally id.*) In addition to Defendant Altivia, Plaintiff named Jason Bonham II, John Ellis II, Patrick Andre Higginbotham, and Donald Ray Huffman, Jr. ("Shift Supervisors") as defendants. (*Id.* at 6, ¶ 6.) Plaintiff claims that these individuals are shift supervisors of Defendant Altivia's operations and would be charged with carrying out Defendant Altivia's threats to shut off the nitrogen supply. (*Id.*, ¶¶ 6, 9.) The Complaint specifically states that Plaintiff is not seeking any monetary relief from the Shift Supervisors and explains that they are only a party to this action because the requested relief involves their job duties. (*Id.*, ¶¶ 8–9.)

Defendant Altivia removed this matter. (ECF No. 29.) Plaintiff then filed the pending motion to remand. (ECF No. 18.) Defendant Altivia filed a response, (ECF No. 33), and Plaintiff filed a reply, (ECF No. 35).

As such, this matter is fully briefed and ripe for adjudication.

## *II. LEGAL STANDARD*

The federal removal statute allows a defendant to a civil action brought in state court to remove a case to federal district court if the federal court would have original jurisdiction over the

case. 28 U.S.C. § 1441(a). A party may challenge removal based on either a lack of subject matter jurisdiction or a procedural defect apart from jurisdiction. *See* 28 U.S.C. § 1447(c); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F. 3d 192, 196-97 (4th Cir. 2008). Because removal of civil cases from state to federal court infringes state sovereignty, courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") (citation omitted); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (noting "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction") (citation omitted).

## *III. DISCUSSION*

In this case, the sole basis invoked for this Court's jurisdiction in the Notice of Removal was diversity of the parties. (ECF No. 29.) The Notice of Removal also explicitly asserts that the Shift Supervisors, who are all residents of West Virginia, were fraudulently joined. (*Id.*) Each issue is discussed in turn below.

### *A. Diversity Jurisdiction*

Federal courts are courts of limited jurisdiction, meaning they can only exercise power to hear cases and controversies when they are authorized to do so by the United States Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994);

*ColonialWebb Contractors Co. v. Hill Phoenix, Inc.*, 175 F.4th 253, 259 (4th Cir. 2026) ("The types of cases and categories of claims federal courts may hear are listed in Article III § 2 of the United States Constitution and various federal jurisdictional statutes."). In general, a case may be filed in federal court if there is diversity of citizenship under 28 U.S.C. § 1332 or if there is federal question jurisdiction under 28 U.S.C. § 1331.

Of relevance, diversity jurisdiction exists when an action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). If any defendant resides in the same state as any plaintiff, there is no complete diversity and no federal jurisdiction. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). This complete diversity rule "makes it difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit prior to removal." *Id.* (footnote omitted).

Similarly, the removal statute has a special provision that applies when a case is removable based on "diversity" jurisdiction under § 1332. When removal is based on diversity jurisdiction, the removal statute provides that such an action "may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). This requirement is known as the "Forum Defendant Rule," *Phillips*, 93 F. Supp. 3d at 548, and prevents a defendant, who is a citizen of the state in which the state court action was filed, from invoking diversity jurisdiction to justify removal to federal court, *Hanson v. Depot LBX, Inc.*, 756 F. Supp. 3d 56, 59 (W.D. Va. 2024) (internal citation omitted).

If a case is removed to federal court, "federal jurisdiction . . . is fixed at the time the . . . notice of removal is filed." *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th

Cir.2008) (citing *Mollan v. Torrance*, 22 U.S. (9 Wheat) 537, 539, 6 L.Ed. 154 (1824)). "The burden of establishing federal jurisdiction is placed upon the party seeking removal, and defendants have the burden to show the existence of federal jurisdiction by a preponderance of the evidence." *Phillips Constr., LLC v. Daniels L. Firm, PLLC*, 93 F. Supp. 3d 544, 547 (S.D. W. Va. 2015) (Johnston, J.).

Here, Plaintiff invokes the Forum Defendant Rule. (ECF No. 19.) Specifically, Plaintiff asserts—and Defendants admit—that, like Plaintiff, the Shift Supervisors are a citizens of West Virginia. (*See id.*; *see also* ECF No. 33.) Thus, because the Shift Supervisors are citizens of the forum state, removal to this court was seemingly improper. 28 U.S.C. §§ 1441(b)(2), 1447(c).

***B. Fraudulent Joinder***

As noted above, though, the Forum Defendant Rule requires that parties be "properly joined." *See* 28 U.S.C. § 1441(b)(2). To that extent, the doctrine of fraudulent joinder "permits removal when a non-diverse party is (or has been) a defendant in the case" when the joinder of nondiverse parties was not proper. *Mayes*, 198 F.3d at 461 (internal citations omitted). In essence, the fraudulent joinder doctrine allows a court "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.*

A defendant seeking removal of a state court action to federal court bears the heavy burden of establishing that a non-diverse defendant has been fraudulently joined. *See id.* at 464. In order to establish the existence of fraudulent joinder, "the removing party must establish either: that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of

jurisdictional facts. *Id.* (emphasis in original) (citation and alterations omitted). In applying this strict standard, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall v. Manville Sales Corp*., 6 F.3d 229, 233 (4th Cir.1993); *also compare Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (stating that the standard for evaluating a fraudulent joinder issue "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)") *with Allard v. Laroya*, 163 F. Supp. 3d 309, 311 n.2 (E.D. Va. 2016) (noting that *Hartley* was decided before the Supreme Court's heightening of the federal pleading standard and thus that the Fourth Circuit's statement "was noting that the fraudulent joinder standard is higher than the old possibility standard of 12(b)(6)"). Fraudulent joinder claims are thus "subject to a rather black-and-white analysis in this circuit," with "[a]ny shades of gray . . . resolved in favor of remand." *Adkins v. Consolidation Coal Co.*, 856 F. Supp. 2d 817, 820 (S.D. W. Va. 2012). "Once the court identifies [a] glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Hartley*, 187 F.3d at 426.

In evaluating a claim of fraudulent joinder, all legal and factual issues must be resolved in favor of the plaintiff. *Mayes*, 198 F.3d at 464. A court making a determination on the issue of fraudulent joinder "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Id.* (citation and internal quotation marks omitted).

Here, Defendants do not allege that there has been outright fraud in the Plaintiff's pleading of jurisdictional facts. Thus, the only question is whether Plaintiff has any possibility of obtaining relief from the Shift Supervisors, the non-diverse defendants, in state court. If so, then the case must be remanded to state court for lack of diversity jurisdiction.

To that extent, Plaintiff's Complaint asserts no causes of action against the Shift Supervisors. (*See* ECF No. 29-2.) However, Plaintiff contends that these defendants "are Altivia employees whose individual responsibilities lie at the center of this dispute," and "will be responsible for carrying out and sustaining Altivia's order to terminate Liberty One's nitrogen supply." (ECF No. 19 at 6.) Based on this employment relationship, Plaintiff claims that joinder is proper for two reasons. (*See id.* at 6–12.) Each theory is discussed in turn below.

**1. Participation in Tortious Conduct**

To start, Plaintiff claims that because, "under West Virginia law, officers and employees may be held liable for participation in tortious conduct, courts regularly find no fraudulent joinder based on the presence of defendants" such as the Shift Supervisors. (ECF No. 19 at 6.) Specifically, Plaintiff relies on *Bailey v. Wal-Mart Stores E., L.P.*, No. CIV.A. 2:05-cv-00552, 2005 WL 2405948 (S.D. W. Va. Sept. 29, 2005), *Ross Bros. Const. Co. v. Sparkman*, No. CIV.A. 3:06-0116, 2006 WL 1519362 (S.D. W. Va. May 25, 2006), *Carden v. Wal-Mart Stores, Inc.*, 574 F. Supp. 2d 582 (S.D. W. Va. 2008), and *McKean v. Mal-Mart Stores Inc.*, No. CIV.A. 2:05-cv-0176, 2005 WL 1785260 (S.D. W. Va. July 26, 2005). (*Id.* at 6–7.)

That may be so. However, Defendants correctly recognize that each of those cases "involved an independent tort claim . . . asserted directly against the non-diverse individual defendants based on that person's *own* alleged wrongful conduct." (ECF No. 33 at 4–5.) Whereas, as noted above, Plaintiff's Complaint does not assert any claims against the Shift Supervisors. (*See* ECF No. 29-2.) In fact, the Complaint does not allege any wrongdoing at all on behalf of the Shift Supervisors. (*See generally id.*) Given the complete dearth of allegations against the Shift Supervisors, there is "no possibility" that Plaintiff would be able to establish a

cause of action against them in state court. *See Mayes*, 198 F.3d at 464; *Flores v. Ethicon, Inc.*, 563 Fed.Appx. 266, 270 (4th Cir. 2014) (explaining that, where the plaintiff fails to make any allegations that could allow a court to reasonably infer a cause of action, a finding of fraudulent joinder is appropriate); *AIDS Counseling and Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (noting that fraudulent joinder exists where no cause of action is stated against a nondiverse defendant).

Simply put, the mere potential for liability based on "participation in tortious conduct" is wholly insufficient when no participation is, in fact, alleged.

**2. Preliminary Injunction**

Nevertheless, Plaintiff argues that, pursuant to state and federal rules of civil procedure, it can seek a preliminary injunction against both the individual and corporate defendants. (ECF No. 19 at 7.) Plaintiff reasons that "the purpose of a preliminary injunction is not to adjudicate the merits, but to preserve the status quo and prevent irreparable harm pending final resolution." (*Id.* at 7–8 (internal citations omitted).)[1] Plaintiff further asserts that it is entitled to injunctive relief for "the reasons outlined in its Motion for Preliminary Injunction," (*id.* at 8), even though, to date, there is no motion for preliminary injunction before this Court, (*cf.* ECF No. 29-2 (seeking injunctive relief in the Complaint). Consequently, Plaintiff claims that, because the Court cannot grant the full requested relief without joining the Shift Supervisors, they are not fraudulently joined. (*See* ECF No. 19 at 8.)

[1] Defendants note that, like Plaintiff's previous argument, the cases Plaintiff cites are inapposite to the present case because those cases involved "an independent substantive statutory or regulatory violation asserted against the individual . . . ." (ECF No. 33 at 6.)

Conversely, Defendants reason[2] that "[a]n injunction is a remedy, not a cause of action." (ECF No. 33 at 5 (citing *Mountain Valley Pipeline, LLC v. Wagner*, No. 2:24-CV-12, 2025 WL 685225, at *7 (N.D. W. Va. Mar. 3, 2025).) The Court agrees. As this Court has previously explained, "[a] request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts." *Pinnacle Min. Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 539 (S.D. W. Va. 2009) (Johnston, J.) (internal citations omitted). Here, there are no substantive counts or alleged wrongs asserted against the Shift Supervisors, as discussed above.

Defendants also correctly note that "any injunctive relief this Court grants against Altivia will, as a matter of law, bind every Altivia employee . . . ." (ECF No. 33 at 6 (citing Fed. R. Civ. P. 65(d)(2)(B)).) Specifically, "Federal Rule of Civil Procedure 65 provides that an injunction against a party binds 'the parties' officers, agents, servants, employees, and attorneys.'" *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 530 (4th Cir. 2022) (quoting Fed. R. Civ. P. 65(d)(2)(B)). As such, there is no indication that the Court could not grant the full requested relief without joining the Shift Supervisors. (*Cf.* ECF No. 19 at 8.)

Accordingly, the Court **FINDS** that the Shift Supervisors were fraudulently joined and **ORDERS** that they are **DISMISSED** from this action.[3]

[2] Defendants also argue that a "colorable substantive claim" against the in-state defendants is required, as opposed to "merely the hypothetical possibility that an injunction could be directed at that person." (ECF No. 33 at 4 (citing *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342 (4th Cir. 2013).) However, as Plaintiff notes, *Painter's Mill Grille* does not discuss any of the relevant issues. (*See* ECF No. 35 at 3.)

[3] The parties also dispute whether the Shift Supervisors are nominal parties. (*See* ECF Nos. 29, 19, 33, 35.) However, because the Shift Supervisors have been dismissed as fraudulently joined, the Court need not consider this argument.

## *IV. CONCLUSION*

For these reasons, Plaintiff's Motion to Remand, (ECF No. 18), is **DENIED**. Further, Defendants Jason Bonham II, John Ellis II, Patrick Andre Higginbotham, and Donald Ray Huffman, Jr. are **DISMISSED** from this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 17, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE